offered $20,000 or any such sum for the land incumbered, or any qualified interest therein. From the announcements made at the sale and conversations with the parties before the sale, he thought he was buying the whole property free from liens; and if in fact he did not do so, he was honestly mistaken and did not make the contract as contended for by the plaintiff, and the minds of the parties never met in respect thereto. The negotiations between him and the administrator, before and at the time of the sale, were in reference to the claim of Achey alone, and as to whether the purchaser at the sale would have to pay off that claim, or whether the administrator would settle it out of the proceeds of the sale; and the administrator stated, in substance, that he could settle that claim out of the proceeds. When defendant tendered the $20,000 to plaintiff, he requested an administrator's deed, and declined to pay only when the administrator stated that he would do no more than transfer the bond and would not pay the amount due Achey out of the proceeds of the sale.

ELLIS & GRAY, for plaintiff in error. DORSEY, BREWSTER & HOWELL and J. A. ANDERSON, contra.

---

CAREY v. EAST TENN., VA. & GA. RAILWAY CO.

SIMMONS, C. J.—The plaintiff's evidence, if true, showing facts from which, in the absence of any explanation on the part of the defendant, the jury might have inferred negligence on its part, the case should have been submitted to the jury. Accordingly, it was error to grant a nonsuit.          *Judgment reversed.*
January 14, 1895.

Action for damages. Before Judge WESTMORELAND. City court of Atlanta. May term, 1894.

The suit was for the homicide of Carey; and a nonsuit was granted. He was, and had been for five years,

in the employment of the railway company, his duty being to wipe off trucks, clean cars, brush out, and put on coal. In the place where he stayed he kept buckets, scuttles and brooms. About midnight he was released from duty and told he might go home. He picked up a scuttle and his overcoat, and started to go across the tracks in the company's yard toward the depot, for the purpose (as may be inferred) of depositing the scuttle there, as he usually did. To reach the depot it was necessary to cross the tracks. He would then have gone southward to reach his home. While he was on one of the tracks he was run over and killed by a long "circus car" which was being pushed from the north by a switch-engine. It was dark and had been raining. In violation of a rule of the company, no bell was being rung. This rule also required the use of lamps for signals; and it seems doubtful from the record, whether any light was on the car, and if so, whether it had been so placed that it could have been seen from the south, there being testimony tending both ways. The car was constructed so like a passenger-coach or sleeping-car that it made little or no noise in moving. The track was somewhat curved going northward. There was a street-crossing with an electric lamp about 100 yards to the south. One witness testified: From where Carey was lying on the track, one could look up the railroad for two or three hundred yards. There was no obstruction there to keep him from seeing it. If there had been lights he could have seen. I do not know whether he could have heard it. I did not see nor hear it. It passed within 15 or 16 feet of where I was. I probably could have heard it had I been listening. I was not on the track.—Another, who was on the car, testified: Carey could have seen my light if he had been on the track on the conductor's side. I don't know what would have kept him from seeing the conductor.—There was some testimony indi-

cating that the engine and car were not on the usual and proper track for going southward to the objective point.

R. J. Jordan, for plaintiff.

Dorsey, Brewster & Howell, for defendant.

---

## Lanier v. Ratcliff.

Simmons, C. J.—The plaintiff in *certiorari* having on December 17th, 1892, applied for and obtained the judge's sanction of the petition for *certiorari*, and having on the same day filed the petition in the clerk's office, and the *certiorari* having been issued in due time and made returnable to the next term of the superior court, the case stood for trial at the May term, 1893, of that court; and the mere failure of the clerk to date the writ of *certiorari* afforded no excuse to the plaintiff in *certiorari* for failing to give the defendant in *certiorari* the notice required by law, that the same was returnable to and stood for a hearing at the term last mentioned. Accordingly there was no error in dismissing the *certiorari* for want of such notice.                                      *Judgment affirmed.*

January 14, 1895.

*Certiorari.*   Before Judge Roney.   Burke superior court.   December term, 1893.

The case was tried in the justice's court on November 17th, 1892. The petition for *certiorari* was sanctioned on December 17, and filed in the clerk's office of the superior court of Burke county on the same day. The clerk issued the writ of *certiorari*, directing the magistrate to certify and send up the proceedings "to the next May term of said superior court." This writ was not dated. On the first day of the May term, 1893, the magistrate filed his answer. The case was not heard at that term. On September 23, 1893, defendant caused plaintiff to be served with written notice of the sanction of the writ and the filing of the answer, further stating that the case "will be heard and determined in vacation by H. C. Roney, judge of the superior courts of the Augusta circuit, at his office in Augusta, Ga., or at such